UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANNY SANTIAGO CABEJE,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:22-cv-00489-HBK<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE TO COMMISSIONER OF SOCIAL SECURITY [1]<br><br>(Doc. Nos. 13, 15) |

Manny Santiago Cabeje ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 13, 15-16). For the reasons stated, the Court orders this matter remanded for further administrative proceedings.

## I.   JURISDICTION

Plaintiff protectively filed for disability insurance benefits on October 8, 2019, alleging an

---

[1] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 9).

onset date of August 21, 2019. (AR 210-13). Benefits were denied initially (AR 62-69, 83-87), and upon reconsideration (AR 71-81, 89-93). Plaintiff appeared before an Administrative Law Judge ("ALJ") on May 24, 2021. (AR 35-61). Plaintiff was represented by counsel, and testified at the hearing. (*Id*.). On June 28, 2021, the ALJ issued an unfavorable decision (AR 12-34), and on March 21, 2022 the Appeals Council denied review (AR 1-6). The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## II.     BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 50 years old at the time of the hearing. (*See* AR 253). He graduated from high school. (AR 43). He lives with his wife. (AR 42-43). Plaintiff has work history as a highway maintenance worker. (AR 43-44, 52-53). Plaintiff testified that he had back surgery in 2017, and another back surgery in 2018, but the pain is getting worse. (AR 44). He experiences pain in his lower back and left leg, and numbness at the "bottom" of his leg. (AR 44-45). Plaintiff reported that he walks twice around his house two or three times a day, but he must rest every 10 minutes; he has to lie down 3 times a day for 30-45 minutes at a time; and he elevates his feet 3-4 times a day for 30 minutes each time. (AR 46-49). He testified that it is "hard" to lift one gallon of milk because of lower back pain, and he experiences numbness and tingling in his leg "all the time." (AR 46, 48-49). Plaintiff testified that he doesn't take "stronger" pain medication because it causes dizziness and stomach pains. (AR 50-51).

## III.    STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence

equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.     FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20

1  C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of
2  impairments which significantly limits [his or her] physical or mental ability to do basic work
3  activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's
4  impairment does not satisfy this severity threshold, however, the Commissioner must find that the
5  claimant is not disabled. 20 C.F.R. § 404.1520(c).

6  At step three, the Commissioner compares the claimant's impairment to severe
7  impairments recognized by the Commissioner to be so severe as to preclude a person from
8  engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as
9  severe or more severe than one of the enumerated impairments, the Commissioner must find the
10  claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

11  If the severity of the claimant's impairment does not meet or exceed the severity of the
12  enumerated impairments, the Commissioner must pause to assess the claimant's "residual
13  functional capacity." Residual functional capacity (RFC), defined generally as the claimant's
14  ability to perform physical and mental work activities on a sustained basis despite his or her
15  limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the
16  analysis.

17  At step four, the Commissioner considers whether, in view of the claimant's RFC, the
18  claimant is capable of performing work that he or she has performed in the past (past relevant
19  work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant
20  work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If
21  the claimant is incapable of performing such work, the analysis proceeds to step five.

22  At step five, the Commissioner considers whether, in view of the claimant's RFC, the
23  claimant is capable of performing other work in the national economy. 20 C.F.R. §
24  404.1520(a)(4)(v). In making this determination, the Commissioner must also consider
25  vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §
26  404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must
27  find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable
28  of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

1    therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

2    The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 21, 2019, the alleged onset date.  (AR 17).  At step two, the ALJ found that Plaintiff has the following severe impairment: degenerative disc disease with lumbar fusion.  (AR 17).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  (AR 18).  The ALJ then found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except he can lift twenty pounds occasionally and ten pounds frequently.  He can stand and/or walk about six hours in an 8-hour workday and he can sit for about six hours in an 8-hour workday.  He can never climb ladders, ropes, or scaffolds, but he can occasionally climb ramps and stairs and can occasionally stoop, kneel, crouch, and crawl.

(AR 19).

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  (AR 27).  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: housekeeper, cafeteria attendant, and small-parts assembler.  (AR 28-29).  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from August 21, 2019, through the date of the decision.  (AR 29).

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the

following issues for this Court's review:

    1. Whether the ALJ properly considered Plaintiff's symptom claims; and

    2. Whether the ALJ properly considered the medical opinion evidence.

(Doc. No. 13 at 5-14).

## VII.   DISCUSSION

### A. Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the

intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 24).  Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of pain and physical disfunction.  (Doc. No. 13 at 11-14).  The Court agrees.

First, the ALJ asserts that "since his August 2018, [Plaintiff] has consistently reported a 70% or greater improvement in his pain and 'manageable' symptoms, with no more than conservative care." (AR 20-21 (similarly finding that Plaintiff "reports his pain is stable for years, rated a two or three, and noticeable primarily at night after modified light duty construction work.  Here too, he reports his pain is manageable at the time of his alleged onset date with use of Aleve and Norco, as needed, without reporting adverse side effects during his pain management or primary care at the time or since, on review.")).  The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).  Furthermore, evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).  However, symptom improvement should be considered within the context of the "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person . . . makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

In support of this finding, the ALJ repeatedly cites to the same treatment records: (1) a March 2020 report of more than 80% improvement in symptoms after epidural injection, and a subsequent May 2020 treatment note recommending additional epidural injections because Plaintiff's symptoms had returned; (2) a January 2020 report to Plaintiff's primary care provider that he maintained a "healthy active lifestyle"; (3) a March 2020 treatment note from primary care provider noting no symptoms of backache or sciatica and occasional use of Tylenol; (4) an

August 2020 report of 70% improvement of symptoms after additional epidural injections; and (5) a January 2021 report of lumbar pain radiating to his legs, pain level 4-6 depending on activity or weather, pain level of 3 with medication, and symptoms increased with prolonged sitting and standing. (AR 20-22, 759, 804-05, 821-22, 827-29, 846). The Court's review of these records, however, indicate they also include evidence that supports Plaintiff's symptom claims, including "sharp, tingling, aching, discomfort, varying with activity, increasing with movement and pain," bilateral radiating pain worse in the left leg, numbness in left calf, intermittent weakness to left lower extremity, pain to palpation to the mid lumbar spine, mild pain on flexion, 4/5 strength to the left hip flexion and knee extension, and decreased sensation in the left lower extremity. (AR 759, 804, 846).

The ALJ also cites to a handful of additional treatment notes, in some cases dated well before the alleged onset date, that upon further review do not appear to support a finding of "consistent" improvement and only "manageable" symptoms across the entire adjudicatory period. (*See* AR 20-22, 333 (noting Plaintiff had two surgeries and "continues to report problems relating to lower back" amid process of medical retirement), 507 (Plaintiff reporting 80% improvement after his first back surgery in 2018), 591 (noting only that Plaintiff underwent "redo disckectomy, decompression, and fusion" surgery), 574 (noting Plaintiff reported 3 out of 10 pain level with medications and noticeable 50% to 75% of the time, but also noting lumbar pain, unable to touch toes, limited lumbar flexion and extension, and pain after prolonged sitting), 539 (reporting 2-3 out of 10 pain after second back surgery in February 2019, but also mild low back and lower extremity pain). Rather, while selected records support the ALJ's finding that Plaintiff rated his pain at a 3 on a 10 point scale "even without use of prescribed medications," records from the same timeframe regularly include pain ratings of 4-5 on a scale of 10 with medication and a 6-7 without medication, and further note that symptoms are aggravated by lifting, changing positions, pulling, pushing, carrying, sitting, twisting, bending, yard work and/or household chores. (See AR 535, 541 (noting Plaintiff wants to go back to work), 543, 552, 567, 580, 653, 656, 659, 662, 665, 668, 674, 677, 680, 844, 846, 852, 859, 861, 863, 865, 867, 869, 871, 873, 878, 880).

Finally, Plaintiff argues his care was not conservative as he underwent two back surgeries, and two epidural steroid injections during the relevant period, that provided only "temporary relief." (Doc. No. 13 at 13 (citing AR 751, 802); *See Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017) (referring to even recommendation for surgery as "aggressive intervention"); *Garrison*, 759 F.3d at 1015 n.20 (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"). Upon review of the record, the Court further notes that, in February 2021, Plaintiff's treating provider requested authorization for an MRI of his lumbar spine because conservative care, which may include "NSAIDS, muscle relaxants, physical therapy, chiropractic care and/or acupuncture," had been "ineffective in resolving (or progression has been below acceptable normal) [in] this case and an underlying pathology needs to be ruled out." (AR 845). For all of these reasons, the ALJ's finding that Plaintiff's symptoms were "manageable" with "conservative" treatment is not supported by substantial evidence. This not a clear, convincing, and specific reason to reject Plaintiff's symptom claims.

Second, the ALJ noted unremarkable imaging and examinations "suggests [Plaintiff's] symptoms are not as severe as he alleged at the hearing." (AR 20-24). In support of this finding, the ALJ cited to the December 2019 and March 2021 MRI imaging showing borderline stenosis at L3-L4, mild disc protrusion at L3-L4 and L5-S1, causing moderate narrowing of the central canal; and June 2019 examination findings of negative straight leg testing, full motor strength, intact reflexes and sensations, and independent gait. (AR 20-22, 640, 800, 839-40). Plaintiff argues the record does not support the ALJ's finding that objective imaging and physical examinations were "unremarkable"; rather, while not acknowledged in the ALJ decision, objective findings from the relevant adjudicatory period include antalgic gait, limited lumbar range of motion, lumbar tenderness, muscle spasms, reduced strength and sensation in the left lower extremity, radicular symptoms in the left lower extremity, 2021 MRI findings of disc protrusion with moderate narrowing of the central canal, and a December 2019 EMG showing "abnormal findings" that "may be" S1 radiculopathy. (Doc. No. 13 at 13 (citing AR 326, 554, 562, 572, 574, 581, 594, 596, 644, 654, 657, 660, 663, 666, 672, 675, 681, 683, 839, 870, 874, 877, 879, 881)). The ALJ may not "cherry pick" aspects of the medical record and focus only on

9

those aspects that fail to support a finding of disability. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Moreover, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective evidence, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits *solely* because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added)); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). As discussed above, the additional reasons given by the ALJ for discounting Plaintiff's symptom claims were not supported by substantial evidence. Thus, because lack of corroboration by the objective evidence cannot stand alone as a basis for rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate.

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.[2] On remand, the ALJ must reconsider Plaintiff's symptom claims.

**B. Medical Opinions**

Plaintiff additionally challenges the ALJ's evaluation of the medical opinion evidence, including treating physician William Foxley, M.D., treating chiropractor Michael Houston, D.C., and state agency reviewing physician L. Tanaka, M.D. (Doc. No. 13 at 15-23). Because the ALJ's consideration of the medical opinion evidence is at least partially dependent on a proper evaluation of Plaintiff's symptom claims, the Court declines to address these challenges in detail here. (*See, e.g.*, AR 25 (noting Dr. Foxley relied on "new subjective complaints" as opposed to "unchanged medical evidence"), 27 (rejecting Dr. Tanaka's opinion for the same unsupported reasons given to discount Plaintiff's symptom claims)).

The Court is constrained to note that the ALJ found Plaintiff's representative "only requested Dr. Foxley's opinion [in November 2020] whether his limits would preclude the

---

[2] The ALJ specifically noted that she "did not account for the claimant's contentions he needs to lay down, elevate his feet or walk with an assistive device, because his statements are not consistent with the record." (AR 24). These "contentions" should be reconsidered on remand along with all of Plaintiff's subjective complaints for the reasons discussed *supra*.

claimant from work for a continuous period of six-months or more, rather than addressing the 12-month durational issue involved in the claimant's current disability claim." (AR 26, 838). To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505; *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). Thus, it appears the Dr. Foxley's assessed limitations do not meet the Social Security Administration's duration requirement. *See Daniel v. Kijakazi*, 2023 WL 5956813, at *8 (Sept. 13, 2023) ("Because the limitation did not meet the twelve-month duration requirement, [any] error in addressing the limitation is nonprejudicial and therefore harmless error."). Nonetheless, light of the of the need to reconsider Plaintiff's symptom claims on remand, as discussed in detail above, the ALJ must reevaluate all relevant medical opinion evidence on remand.

### C. Remedy

Plaintiff requests that the Court remand for further administrative proceedings. (Doc. No. 13 at 23). The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. On remand, the ALJ should reevaluate Plaintiff's symptom claims, as well as all relevant medical evidence, including medical opinions. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

////

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 13) is GRANTED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 15) is DENIED.
3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.
4. An application for attorney fees may be filed by separate motion within thirty (30) days.
5. The Clerk shall enter judgment in favor of Plaintiff, terminate any motions and deadlines, and close this case.

Dated:    September 25, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE